FILED

November 16, 2010

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003076355

No. pages 14

THOMAS E. MAY

CHAPTER 7 TRUSTEE

5098 FOOTHILLS BLVD.  3-484

ROSEVILLE, CA 95747

(916) 740-4329

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

Sacramento Division

| | |
|---|---|
| In re:<br>　LEE, CHIL SUNG<br><br>LEE, PUN CHA<br><br>　　　　　　　　　,Debtor | **CASE NO.  09-44873-A-7**<br><br>**DCN:  TEM-01**<br>**DATE: December 14, 2010**<br><br>**TIME: 9:30 a.m.**<br>**DEPT: C, Courtroom 35, Sixth Floor**<br>**JUDGE: CHRISTOPHER M. KLEIN** |

## TRUSTEE'S MOTION TO SELL THE ESTATE'S INTEREST IN REAL PROPERTY FREE AND CLEAR OF LIENS

Thomas E. May, Bankruptcy Trustee herein, respectfully represents:

1. LEE, CHIL SUNG and LEE, PUN CHA("Debtors") filed a Chapter 7 petition on 11/13/09. I have been appointed Trustee for the bankruptcy Estate.

2. On February 3, 2010 the Court approved Trustee Application for Authority to Employ Real Estate Broker.

3. The Debtors are Trustor/Borrower in real commercial property, located at **4210 Rocklin Rd., Rocklin, California (parcel# 045-110-026-000)**. The debtor

/

formerly operated a restaurant on the property. The Debtors have listed two secured creditors with Deeds of Trust totaling approximately $550,000.00. Your Trustee, after extensive communication, has persuaded the secondary lien holder (Bay Area Development and the SBA) to reconvey title,and/or release its $220,000.00 lien, and join unsecured creditors, thusly allowing your Trustee to proceed with liquidation of this commercial property.

4. Your Trustee accepts reduced compensation to allow for net proceeds to unsecured creditors. (see Exhibit 1)

5. This property has been listed on the market for ten (10) months.

6. The Trustee believes that the property is now worth $450,000.00 maximum based on recent comparable sales, a continuing oversupply of similar properties, and very few qualified borrowers. Given such economics after normal real estate commission and other closing costs, (see Exhibit 1) the net proceeds of this sale should yield $15,000.00 to the unsecured creditors (Exhibit 3).

7. The Trustee has received and accepted an offer dated October 26, 2010 from Soohwan Kim and Jaejin Kim ("Buyer"),no relationship to debtors, to purchase the property for the sum of $450,000.00 as evidenced by the Purchase Agreement and Escrow Instructions attached to the exhibits as (Exhibit 3.) The offer is **subject to Court approval** and subject to the consideration by the Court of overbids at the time of hearing. Delivery of occupancy of tenants or tenant agreements is not a condition of sale. The Trustee believes that a $450,000.00 offer is in the best interest of this bankruptcy estate. The buyers have submitted $10,000.00 to escrow

2

with the offer. The buyers will add $35,000.00 to the down payment of the purchase and are seeking financing of the remaining $405,000.00. The buyers' agent has represented that the buyers are already qualified for the above financing. The buyers have requested 30 days to qualify their financing after acceptance of this offer. This transaction is subject to overbid in the incremental amount of at least $2,000.00 or as the U.S. Bankruptcy Court directs.

8. Any escrow, title and other closing costs for this transaction shall be as agreed upon in the attached offer (Exhibit 3).

9. An escrow has been opened at Old Republic Title Company, escrow number 2123008952-KDD and a $10,000.00 has been placed with said title company.

10. The Deed of Trust holder (Wells Fargo Bank in the approximate sum of $322,000.00) real property taxes, utility liens and property owners association liens will be paid from escrow and title fees. A copy of the estimated closing statement is attached to the exhibits as Exhibit 2.

11. The State of California, Board of Equalization, has recorded a lien and has agreed to release its lien as to this property only. The State of California, Board of Equalization, will remain in the official records of Placer County.

**WHEREFORE**, Thomas E. May respectfully requests:

1. This Court approve the sale of the estate's interest in real property located at 4210 Rocklin rd. , Rocklin, California, (parcel# 045-110-028-000) for a purchase price of $450,000.00 subject to the terms and conditions expressed in the purchase agreement dated October 26, 2010.

2. Authorize the Trustee to execute all documents necessary to conclude the sale.

*3*

3. Authorize the Trustee to extend the deadline for closing of escrow up to 60 days from the date of entry of this order if the Trustee determines such extension is in the best interest of the estate, upon the condition that the Buyers agree to pay any additional interest or other costs incurred by the delay.

4. For such other and further relief as the court deems appropriate.

5. Respectfully submitted:

DATED: November 16, 2010

Thomas E. May
Chapter 7 Trustee

4

# EXHIBIT 1

### Lee Case # 09-44873
### 4210 Rocklin Rd, Rocklin California
### Economics of Sale

|  | Current |
|---|---|
| **Current Marketable Price** | **450,000.00** |
| less selling commission 6% | 27,000.00 |
| less Wells Fargo 1st lien reduced demand | 322,000.00 |
| SBA second mortgage removed $220,000. |  |
| less delinquent Property Tax | 61,146.58 |
| less park owners assn fees past due | 4,012.65 |
| less IRS  tax liens | 10,000.00 |
| less EDD lien for uninsured business | 3,000.00 |
| less SMUD lien | 3,005.95 |
| **Possible estate proceeds** | **19,834.82** |
| Trustee Reduced Compensation | 4,500.00 |
| Title and Escrow Fees | 181.40 |
| Capital Gain Tax on Basis | 0.00 |
| **net proceeds to estate creditors** | **15,153.42** |

| | |
|---|---|
| Cost of Building | 800,000.00 |
| Prior Depreciation | (150,000.00) |
| Basis for Capital Gain calculation | 650,000.00 |
| Capital Gain | 0.00 |

5

*EXHIBIT 2*

## STANDARD COMMERCIAL/INVESTMENT PURCHASE AGREEMENT
### (Non-Residential Or More Than Four Residential Units)

**DEFINITIONS**

**BROKER** includes cooperating broker and all sales persons. **DAYS** means calendar days, midnight to midnight, unless otherwise specified. **BUSINESS DAY** excludes Saturdays, Sundays and legal holidays. **DATE OF ACCEPTANCE** means the date Seller accepts the offer or the Buyer accepts the counter offer, and the written acceptance is put in the course of transmission to the other party. This rule also applies to the removal of contingencies. **DELIVERED** means personally delivered, transmitted electronically in accordance with applicable laws, by a nationally recognized overnight courier, or by first class mail, postage prepaid. In the event of mailing, the document will be deemed delivered three (3) business days after deposit; in the event of overnight courier, one (1) business day after deposit; and if electronically at the time of transmission provided that a transmission report is generated and retained by the sender reflecting the accurate transmission of the document. Unless otherwise provided in this Agreement or by law, delivery to the agent will constitute delivery to the principal. **DATE OF CLOSING** means the date title is transferred. **TERMINATING THE AGREEMENT** means that both parties are relieved of their obligations and all deposits will be returned to Buyer. **PROPERTY** means the real property and any personal property included in the sale.

**AGENCY RELATIONSHIP CONFIRMATION.** The following agency relationship is hereby confirmed for this transaction and supersedes any prior agency election:

LISTING AGENT: _____ Jim Walker, TRI Commercial _____ is the agent of (check one):
(Print Firm Name)

☒ the Seller exclusively; or ☐ both the Buyer and the Seller.

SELLING AGENT: _____ Loren W. Fourness _____ (if not the same as the Listing Agent) is the agent of (check one):
(Print Firm Name)

☒ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and the Seller.

Note: This confirmation DOES NOT take the place of the AGENCY DISCLOSURE form (P.P. Form 110.42 CAL).

_____ Soohwan Kim and Jaelin Kim, husband and wife _____ hereinafter designated as BUYER, offers to purchase the real property commonly known as _____ 4210 Rocklin Road _____

_____ Rocklin, California _____ 045-110-028-0000
(Street Address)                    (City/State/Zip)                    (Parcel #)

FOR THE PURCHASE PRICE OF $_____ 450,000.00 _____ ( _____ Four hundred fifty thousand ---------------
dollars) on the following terms and conditions:

1. **FINANCING TERMS AND LOAN PROVISIONS.** (Buyer represents that the funds required for the initial deposit, additional deposit, cash balance, and closing costs are readily available.)

   A. $_____ 10,000.00 DEPOSIT evidenced by ☒ check, or ☐ other: _____
   held uncashed until acceptance and not later than three (3) business days thereafter deposited towards the purchase price with: Chicago Title Company, Lynette Rhodes, Escrow Officer _____

   B. $_____ ADDITIONAL CASH DEPOSIT to be placed in escrow ☐ within _____ days after acceptance.
   ☐ upon receipt of Loan Commitment per item 2, ☐ Other: _____

   C. $_____ 35,000.00 BALANCE OF CASH PAYMENT needed to close, not including closing costs.

   D. $_____ 405,000.00 NEW FIRST LOAN:
   ☒ FIXED RATE: For _____ 10 _____ years, interest not to exceed _____ 7 _____%, payable at approximately $ 3,010.00 per month (principal and interest only), with the balance due in not less than _____ 22 _____ years.
   ☐ ARM: For _____ years, initial interest rate not to exceed _____%, with initial monthly payments of $_____ and maximum lifetime rate not to exceed _____%.
   ☐ Buyer will pay loan fee or points not to exceed _____.
   ☐ Lender to appraise property at no less than purchase price prior to loan contingency removal.
   ☐ OTHER TERMS: _____

   E. $_____ EXISTING FINANCING: ☐ ASSUMPTION OF, ☐ SUBJECT TO existing loan of record described as follows: _____

   F. $_____ SELLER FINANCING: ☐ FIRST LOAN, ☐ SECOND LOAN, ☐ THIRD LOAN, secured by the property.
   ☐ Seller Financing Addendum, P.P. Form 131.1-3 CAL, is attached and made a part of this Agreement.

   G. $_____ OTHER FINANCING TERMS: _____

   H. $_____ 450,000.00 TOTAL PURCHASE PRICE (not including closing costs).

2. **LOAN APPROVAL.** (Please check one of the following):

   A. ☐ CONTRACT IS NOT CONTINGENT upon Buyer obtaining a loan.

   B. ☒ CONTRACT IS CONTINGENT upon Buyer's ability to obtain a commitment for new financing, as set forth above, from a lender or mortgage broker of Buyer's choice, and/or consent to assumption of existing financing provided for in this Agreement, within _____ 30 _____ days after acceptance. Buyer will in good faith use his or her best efforts to qualify for and obtain

Buyer [ SK ] and Seller [ MK ] have read this page.

CAUTION: The copyright laws of the United States forbid the unauthorized reproduction of this form by any means including scanning or computerized formats.

FORM 101-C.1 CAL (9-2009) COPYRIGHT BY PROFESSIONAL PUBLISHING, NOVATO, CA

Form generated by: TrueForms™ from REVEAL® SYSTEMS, Inc. 800-499-9612

**PROFESSIONAL PUBLISHING**

6

the financing and will complete and submit a loan application within five (5) days after acceptance. Buyer ☒ will, ☐ will not provide a ☒ prequalification letter, or ☒ preapproval letter from lender or mortgage broker based on Buyer's application and credit report within ____30____ days after acceptance. In the event a loan commitment or consent is obtained but not timely honored without fault of Buyer, Buyer may terminate this Agreement.

3. **BONDS AND ASSESSMENTS.** All bonds and assessments which are part of or paid with the property tax bill will be assumed by the Buyer. In the event there are other bonds or assessments which have an outstanding principal balance and are a lien upon the property, the current installment will be prorated between Buyer and Seller as of the date of closing. Future installments will be assumed by Buyer WITHOUT CREDIT toward the purchase price, EXCEPT AS FOLLOWS: _____ _____. This Agreement is conditioned upon both parties verifying and approving in writing the amount of any bond or assessment to be assumed or paid within ten (10) days after receipt of the preliminary title report or property tax bill whichever is later. In the event of disapproval, the disapproving party may terminate this Agreement.

4. **PROPERTY TAX.** Within three (3) days after acceptance, Seller will deliver to Buyer for his or her approval a copy of the latest property tax bill. Buyer is advised that: (a) the property will be reassessed upon change of ownership which may result in a tax increase; and (b) the tax bill may not include certain exempt items such as school taxes on property owned by seniors. Buyer should make further inquiry at the assessor's office. Within five (5) days after receipt of the tax bill, Buyer will in writing approve or disapprove the tax bill. In the event of disapproval, Buyer may terminate this Agreement.

5. **EXISTING LOANS.** Seller will, within three (3) days after acceptance, provide Buyer with copies of all notes and deeds of trust to be assumed or taken subject to. Within five (5) days after receipt Buyer will notify Seller in writing of his or her approval or disapproval of the terms of the documents. Approval will not be unreasonably withheld. Within three (3) days after acceptance, Seller will submit a written request for a current Statement of Condition on the above loan(s). Seller warrants that all loans will be current at close of escrow. Seller will pay any prepayment charge imposed on any existing loan paid off at close of escrow. Buyer will pay the prepayment charge on any loan which is to remain a lien upon the property after close of escrow. The parties are encouraged to consult his or her lender regarding prepayment provisions and any due on sale clauses.

6. **DESTRUCTION OF IMPROVEMENTS.** If the improvements of the property are destroyed, materially damaged, or found to be materially defective as a result of such damage prior to close of escrow, Buyer may terminate this Agreement by written notice delivered to Seller or his or her Broker, and all unused deposits will be returned. In the event Buyer does not elect to terminate this Agreement, Buyer will be entitled to receive, in addition to the property, any insurance proceeds payable on account of the damage or destruction.

7. **EXAMINATION OF TITLE.** In addition to any encumbrances assumed or taken "subject to," Seller will convey title to the property subject only to: [1] real estate taxes not yet due; and [2] covenants, conditions, restrictions, rights of way and easements of record, if any.

   Within three (3) days after acceptance, Buyer will order a Preliminary Title Report and copies of CC&Rs and other documents of record if applicable. Within five (5) days after receipt, Buyer will report to Seller in writing any valid objections to title contained in such report (other than monetary liens to be paid upon close of escrow). If Buyer objects to any exceptions to the title, Seller will use due diligence to remove such exceptions at his or her own expense before close of escrow. If such exceptions cannot be removed before close of escrow, this Agreement will terminate, unless Buyer elects to purchase the property subject to such exceptions. If Seller concludes he or she is in good faith unable to remove such objections, Seller will so notify Buyer within ten (10) days after receipt of said objections. In that event Buyer may terminate this Agreement.

8. **EVIDENCE OF TITLE** will be in the form of a policy of title insurance, issued by ____Chicago Title Company____, paid by ☒ Buyer, ☐ Seller, ☐ Other_____. NOTE: Buyer should discuss the type of policy with the title company of his or her choice at the time escrow is opened. In the event a lender requires an ALTA lender's policy of title insurance, ☒ Buyer, ☐ Seller will pay the premium.

9. **PRORATIONS.** Rents, real estate taxes, interest, payments on bonds and assessments assumed by Buyer, and homeowners association fees will be prorated as of the date of recordation of the deed. Security deposits, advance rentals, or considerations involving future lease credits will be credited to Buyer.

10. **CLOSING.** Full purchase price to be paid and deed to be recorded ☒ on or before ___Jan. 31st, 2010___, OR ☒ within __90__ days after acceptance. If the closing date falls on a Saturday, Sunday or holiday, the close of escrow will be on the next business day. Both parties will deposit with an authorized escrow holder, to be selected by Buyer, all funds and instruments necessary to complete the sale in accordance with the terms of this Agreement. ☒ Where customary, signed escrow instructions will be delivered to escrow holder within __15__ days after acceptance. Escrow fee to be paid by ____Buyer____. County/City transfer tax(es), if any, to be paid by ____Buyer____. Unless the transaction is exempt, the escrow holder is instructed to remit the required tax withholding amount to the Franchise Tax Board from the proceeds of sale. THIS PURCHASE AGREEMENT TOGETHER WITH ANY ADDENDA WILL CONSTITUTE JOINT ESCROW INSTRUCTIONS TO THE ESCROW HOLDER.

Buyer [ SK ] [ ____ ] and Seller [ ____ ] [ ____ ] have read this page.

CAUTION: The copyright laws of the United States forbid the unauthorized reproduction of this form by any means including scanning or computerized formats.

**PROFESSIONAL PUBLISHING**

Property Address _____ 4210 Rocklin Road _____ Rocklin, California _____

**11. PHYSICAL POSSESSION.** Physical possession of the property, with keys to all property locks, alarms, and garage door openers, will be delivered to Buyer (*check one*):

☒ On the date of recordation of the deed, not later than ___6:00___ ☐ a.m., ☒ p.m.;
☐ On the _____ day after recordation, not later than _____ ☐ a.m., ☐ p.m.

**12. FIXTURES.** All items permanently attached to the property, including light fixtures and bulbs, attached floor coverings, all attached window coverings, including window hardware, window and door screens, storm sash, combination doors, awnings, TV antennas, burglar, fire, smoke and security alarms (unless leased), pool and spa equipment, solar systems, attached fireplace screens, electric garage door openers with controls, outdoor plants and trees (other than in movable containers), are included in the purchase price free of liens, EXCLUDING: _____. If checked ☐ trade fixtures are not included in the sale, but Seller will pay for all costs necessary to repair any damage to the premises caused by the removal.

**13. INSPECTIONS OF PROPERTY.** Buyer will have the right to retain, at his or her expense, licensed experts including but not limited to engineers, geologists, architects, contractors, surveyors, arborists, and structural pest control operators to inspect the property for any structural and nonstructural conditions, including matters concerning roofing, electrical, plumbing, heating, cooling, appliances, well, septic system, pool, boundaries, geological and environmental hazards, toxic substances including asbestos, mold, formaldehyde, radon gas, and lead-based paint. Buyer, if requested by Seller in writing, will promptly furnish, at no cost to Seller, copies of all written inspection reports obtained. Buyer will approve or disapprove in writing all inspection reports obtained within fifteen (15) (or __30__) days after acceptance. In the event of Buyer's disapproval of inspection reports, or discovery of other material facts affecting the value or desirability of the property, Buyer may, within the time stated or mutually agreed upon extension, elect to terminate this Agreement, or invite Seller to negotiate repairs. (See P.P. Form 101-M, Addendum Regarding Removal of Inspection Contingencies.)

**14. ACCESS TO PROPERTY.** Seller agrees to provide reasonable access to the property to Buyer and inspectors, appraisers, and all other professionals representing Buyer.

**15. NOTICE OF VIOLATIONS.** By acceptance, Seller warrants that he or she has no written notice of violations relating to the property from City, County, State, Federal or any other governmental agencies.

**16. INCOME AND EXPENSE STATEMENT.** Within seven (7) days of acceptance, Seller will deliver to Buyer, for his or her approval, a true and complete statement of rental income and expenses. Within seven (7) days of receipt of that statement, Buyer will notify Seller in writing of his or her approval or disapproval. In case of disapproval, Buyer may terminate this Agreement.

**17. SERVICE CONTRACTS.** Within seven (7) days of acceptance, Seller will furnish Buyer, for his or her approval copies of any service and/or equipment rental contracts with respect to the property which run beyond close of escrow. Within seven (7) days of receipt of the copies, Buyer will notify Seller in writing of his or her approval or disapproval. In case of disapproval, Buyer may terminate this Agreement.

**18. EXISTING LEASES.** This Agreement is subject to existing leases, and rental agreements. Within seven (7) days of acceptance, Seller will deliver to Buyer, for his or her approval, true copies of all existing leases and rental agreements, copies of all outstanding notices sent to tenants, and a written statement of any oral agreements with tenants. Seller will also deliver to Buyer, within seven (7) days of acceptance, a statement of any uncured defaults, claims made by or to tenants, and a statement of all tenants' deposits held by Seller. Seller warrants all information to be true and complete. Buyer's obligations are conditioned upon approval of existing leases and rental agreements. Within seven (7) days of receipt of the documents, Buyer will notify Seller in writing of his or her approval or disapproval. In case of disapproval, Buyer may terminate this Agreement. Buyer's obligations under this Agreement are further conditioned upon receipt on or before date of closing of Estoppel Certificates executed by each tenant acknowledging that a lease or rental agreement is in effect, that no lessor default exists, and stating the amount of any prepaid rent or security deposit.

**19. CHANGES DURING TRANSACTION.** During the pendency of this transaction, Seller agrees that no changes in the existing leases or rental agreements will be made, nor new leases or rental agreements entered into, nor will any substantial alterations or repairs be made or undertaken to the property without the written consent of the Buyer.

**20. MAINTENANCE.** Seller will maintain the property until the closing in its present condition, ordinary wear and tear excepted. The heating, ventilating, air conditioning, plumbing, elevators, loading doors, and electrical systems will be in good operating order and condition as of the time of closing.

**21. WALK-THROUGH INSPECTION.** Buyer will have the right to conduct a walk-through inspection of the property within _____ days prior to close of escrow, to verify Seller's compliance with the provisions under Item 12, FIXTURES, and Item 20, MAINTENANCE. This right is not a condition of this Agreement, and Buyer's sole remedy for an alleged breach of these items is a claim for damages. Utilities are to remain turned on until transfer of possession.

**22. COMPLIANCE WITH LOCAL LAWS.** Seller will comply with any local laws applicable to the sale or transfer of the property, including but not limited to: Providing inspections and/or reports for compliance with local building and permit regulations, including septic system inspection reports; compliance with minimum energy conservation standards; and compliance with water

Buyer [ SK ] and Seller [ JH ] have read this page.

CAUTION: The copyright laws of the United States forbid the unauthorized reproduction of this form by any means including scanning or computerized formats.

FORM 101-C.3 CAL (8-2009) COPYRIGHT BY PROFESSIONAL PUBLISHING, NOVATO, CA

Form generated by: TrueForms™ from REVEAL⊚ SYSTEMS, Inc. 800-499-9612

**PROFESSIONAL PUBLISHING**

conservation measures. All required inspections and reports will be ordered within three (3) days after acceptance and will be paid by ☐ Seller, ☒ Buyer. If Seller does not agree within five (5) days after receipt of a report to pay the cost of any repair or improvement required to comply with such laws, Buyer may terminate this Agreement. It is understood that if Seller has given notice that necessary permits or final approvals were not obtained for some improvements, Seller will not be responsible for bringing the improvements into compliance unless otherwise agreed.

23. **OPTIONAL PROVISIONS.** The provisions in this Item 23, if initialed by Buyer are included in this Agreement.

23-A. [_____] [_____] **MAINTENANCE RESERVE.** Seller agrees to leave in escrow a maintenance reserve in the amount of $ _____. If, in the reasonable opinion of a qualified technician, any of the equipment listed under Item 20, MAINTENANCE, is not in working order, Buyer will furnish Seller a copy of the technician's inspection report and/or submit written notice to Seller of non-compliance of any of the terms under Item 20, MAINTENANCE, within five (5) days after occupancy is delivered.

In the event Seller fails to make the repairs and/or corrections within five (5) days after receipt of said report or notice, Seller authorizes the escrow holder to disburse to Buyer against bills for such repairs or corrections the sum of such bills, not to exceed the amount reserved. Said reserve will be disbursed to Buyer or returned to Seller not later than fifteen (15) days after date occupancy is delivered.

23-B. [_____] [_____] **FLOOD HAZARD ZONE.** Buyer has been advised that the property is located in a special flood hazard area designated by the Federal Emergency Management Agency (FEMA). It will be necessary to purchase flood insurance in order to obtain any loan secured by the property from any federally regulated financial institution or a loan insured or guaranteed by an agency of the U.S. Government. The purpose of the program is to provide flood insurance at reasonable cost. For further information consult your lender or insurance carrier.

23-C. [_____] [_____] **EARTHQUAKE FAULT OR SEISMIC HAZARD ZONE DISCLOSURES.** The property is situated in a Earthquake Fault Zone or Seismic Hazard Zone as designated under §§2621-2625 and §§2690-2699.6 of the California Public Resources Code. Construction or development of any structure for human occupancy may be restricted. No representations on the subject are made by Seller or Broker. Buyer may make further independent inquiries at appropriate governmental agencies concerning the use of the property under the terms of the above statutes. Within seven (7) days after acceptance, Buyer will notify Seller in writing of satisfaction or dissatisfaction of said inquiries. In case of dissatisfaction Buyer may terminate this Agreement.

23-D. [_____] [_____] **PROBATE/CONSERVATORSHIP SALE.** Pursuant to the California Probate Code, this sale is subject to court approval at which time the court may allow open competitive bidding. An "AS IS" Addendum (P.P. Form 101-AI) ☐ is, ☐ is not attached and made a part of this Agreement.

23-E. [_____] [_____] **RENT CONTROL ORDINANCE.** Buyer is aware that a local ordinance is in effect which regulates the rights and obligations of property owners. It may also affect the manner in which future rents can be adjusted.

23-F. [_____] [_____] **TAX DEFERRED EXCHANGE (INVESTMENT PROPERTY).** In the event that Seller wishes to enter into a tax deferred exchange for the property, or Buyer wishes to enter into a tax deferred exchange with respect to property owned by him or her in connection with this transaction, each of the parties agrees to cooperate with the other party in connection with such exchange, including the execution of such documents as may be reasonably necessary to complete the exchange; provided that: (a) the other party will not be obligated to delay the closing; (b) all additional costs in connection with the exchange will be borne by the party requesting the exchange; (c) the other party will not be obligated to execute any note, contract, deed or other document providing for any personal liability which would survive the exchange; and (d) the other party will not take title to any property other than the property described in this Agreement. It is understood that a party's rights and obligations under this Agreement may be assigned to a third party intermediary to facilitate the exchange. The other party will be indemnified and held harmless against any liability which arises or is claimed to have arisen on account of the exchange.

23-G. [ SK ] [_____] **PERSONAL PROPERTY.** The purchase price includes all furniture and furnishings and any other personal property owned by Seller and used in the operation of the property per attached signed inventory, receipt of which is hereby acknowledged. This inventory is incorporated by reference. The personal property will be transferred to Buyer by a Warranty Bill of Sale delivered at closing.

24. **DEFAULT.** In the event Buyer defaults in the performance of this Agreement (unless Buyer and Seller have agreed to liquidated damages), Seller may, subject to any rights of Broker, retain Buyer's deposit to the extent of damages sustained and may take such actions as he or she deems appropriate to collect such additional damages as may have been actually sustained. Buyer will have the right to take such action as he or she deems appropriate to recover such portion of the deposit as may be allowed by law. In the event that Buyer defaults (unless Buyer and Seller have agreed to liquidated damages) Buyer agrees to pay the Broker(s) any commission that would be payable by Seller in the absence of such default.

Buyer [ SK ] [_____] and Seller [ JM ] [_____] have read this page.

CAUTION: The copyright laws of the United States forbid the unauthorized reproduction of this form by any means including scanning or computerized formats.

PROFESSIONAL PUBLISHING

25. **ATTORNEY FEES.** In any action arbitration, or other proceeding involving a dispute between Buyer and Seller arising out of the execution of this Agreement or the sale, whether for tort or for breach of contract, and whether or not brought to trial or final judgment, the prevailing party will be entitled to receive from the other party a reasonable attorney fee, expert witness fees, and costs to be determined by the court or arbitrator(s).

26. **EXPIRATION OF OFFER.** This Offer will expire unless acceptance is delivered to Buyer or to Loren W. Fourness _____ _____ (Buyer's Broker) on or before (date) Nov. 10th, 2010 (time) 5:00 ☐ a.m. ☒ p.m.

27. **COUNTERPARTS.** This Agreement may be executed in one or more counterparts, each of which is deemed to be an original.

28. **CONDITIONS SATISFIED/WAIVED IN WRITING.** Each condition or contingency, covenant, approval or disapproval will be satisfied according to its terms or waived by written notice delivered to the other party or his or her Broker.

29. **TIME.** Time is of the essence of this Agreement; provided, however, that if either party fails to comply with any contingency in this Agreement within the time limit specified, this Agreement will not terminate until the other party delivers written notice to the defaulting party requiring compliance within 24 hours after receipt of notice. If the party receiving the notice fails to comply within the 24 hours, the non-defaulting party may terminate this Agreement without further notice.

30. **LIQUIDATED DAMAGES.** By initialing in the spaces below,

[ _SK_ ][ _____ ] Buyer agrees [ _JM_ ][ _____ ] Buyer does not agree

[ _____ ][ _____ ] Seller agrees [ _____ ][ _____ ] Seller does not agree

that in the event Buyer defaults in the performance of this Agreement, Seller will retain as liquidated damages the deposit set forth in items 1-A and 1-B, and that said liquidated damages are reasonable in view of all the circumstances existing on the date of this Agreement. In the event of additional deposit(s) required under item 1-B, the parties will execute a similar liquidated damages provision as required by law. In the event that Buyer defaults and has not made the deposit required under item 1-B or refuses to execute the liquidated damages provision with respect to such additional deposit, then Seller will have the option of retaining the initial deposit or terminating the obligations of the parties under this item 30 and recovering such damages from Buyer as may be allowed by law. The parties understand that in case of dispute mutual cancellation instructions are necessary to release funds from escrow or trust accounts.

31. **MEDIATION OF DISPUTES.** If a dispute arises out of or relates to this Agreement or its breach, by initialing in the "agree" spaces below the parties agree to first try in good faith to settle the dispute by voluntary mediation before resorting to court action or arbitration, unless the dispute is a matter excluded under item 32 – ARBITRATION. The fees of the mediator will be shared equally between all parties to the dispute. If a party initials the "agree" space and later refuses mediation, that party will not be entitled to recover prevailing party attorney fees in any subsequent action.

[ _____ ][ _____ ] Buyer agrees [ _____ ][ _____ ] Buyer does not agree

[ _____ ][ _____ ] Seller agrees [ _____ ][ _____ ] Seller does not agree

32. **ARBITRATION OF DISPUTES.** Any dispute or claim in law or equity arising between the Buyer and Seller out of this Agreement will be decided by neutral binding arbitration in accordance with the California Arbitration Act (C.C.P. §1280 et seq.), and not by court action except as provided by California law for judicial review of arbitration proceedings. If the parties cannot agree upon an arbitrator, a party may petition the Superior Court of the county in which the property is located for an order compelling arbitration and appointing an arbitrator. Service of the petition may be made by first class mail, postage prepaid, to the last known address of the party served. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. The parties will have the right to discovery in accordance with Code of Civil Procedure §1283.05.

The parties agree that the following procedure will govern the making of the award by the arbitrator: (a) a Tentative Award will be made by the arbitrator within 30 days following submission of the matter to the arbitrator; (b) the Tentative Award will explain the factual and legal basis for the arbitrator's decision as to each of the principal controverted issues; (c) the Tentative Award will be in writing unless the parties agree otherwise; provided, however, that if the hearing is concluded within one (1) day, the Tentative Award may be made orally at the hearing in the presence of the parties. Within 15 days after the Tentative Award has been served or announced, any party may serve objections to the Tentative Award. Upon objections being timely served, the arbitrator may call for additional evidence, oral or written argument, or both. If no objections are filed, the Tentative Award will become final without further action by the parties or arbitrator. Within thirty (30) days after the filing of objections, the arbitrator will either make the Tentative Award final or modify or correct the Tentative Award, which will then become final as modified or corrected.

Buyer [ _SK_ ][ _____ ] and Seller [ _JM_ ][ _____ ] have read this page.

CAUTION: The copyright laws of the United States forbid the unauthorized reproduction of this form by any means including scanning or computerized formats.

The provisions of the Code of Civil Procedure authorizing the imposition of sanctions as a result of bad faith actions or tactics will apply to the arbitration proceedings, provided, however, that the arbitrator shall not have the power to commit errors of law, errors of legal reasoning, or rely upon unsupported findings of fact in imposing sanctions for any reason against a party or a party's attorney. In the event such error is claimed, the applicable sanctions may be vacated or corrected on appeal to a court of competent jurisdiction for any such error. A prevailing party will also be entitled to an action for malicious prosecution if the elements of such cause of action are met.

The following matters are excluded from arbitration: (a) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage, or real property sales contract as defined in Civil Code §2985; (b) an unlawful detainer action; (c) the filing or enforcement of a mechanic's lien; (d) any matter which is within the jurisdiction of a probate court, bankruptcy court, or small claims court; or (e) an action for bodily injury or wrongful death. The filing of a judicial action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, will not constitute a waiver of the right to arbitrate under this provision.

NOTICE: By initialing in the ["agree"] space below you are agreeing to have any dispute arising out of the matters included in the "Arbitration of Disputes" provision decided by neutral arbitration as provided by California law and you are giving up any rights you might possess to have the dispute litigated in a court or jury trial. By initialing in the ["agree"] space below you are giving up your judicial rights to discovery and appeal, unless those rights are specifically included in the "Arbitration of Disputes" provision. If you refuse to submit to arbitration after agreeing to this provision, you may be compelled to arbitrate under the authority of the California Code of Civil Procedure. Your agreement to this arbitration provision is voluntary.

We have read and understand the foregoing and agree to submit disputes arising out of the matters included in the "Arbitration of Disputes" provision to neutral arbitration.

[ ___ ] Buyer agrees [ _SK_ ][ ___ ] Buyer does not agree

[ ___ ] Seller agrees [ ___ ][ ___ ] Seller does not agree

33. **SURVIVAL.** The omission from escrow instructions of any provision in this Agreement will not waive the right of any party. All representations or warranties will survive the close of escrow.

34. **ENTIRE AGREEMENT/ASSIGNMENT PROHIBITED.** This document contains the entire agreement of the parties and supersedes all prior agreements with respect to the property which are not expressly set forth. This Agreement may be modified only in writing signed and dated by both parties. Buyer may not assign any right under this agreement without the prior written consent of Seller. Any such assignment will be void and unenforceable.

35. **ADDENDA.** The following addenda are attached and made a part of this Agreement:
    ☐ Addendum No. _____ _____
    ☐ Addendum No. _____ _____

NOTICE: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an internet Web site maintained by the Department of Justice at http://www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides.

LIMITATION OF AGENCY: A real estate broker or agent is qualified to advise on real estate. If you have any questions concerning the legal sufficiency, legal effect, insurance, or tax consequences of this document or the related transactions, consult with your attorney, accountant or insurance advisor.

The undersigned Buyer acknowledges that he or she has thoroughly read and approved each of the provisions of this Offer and agrees to purchase the property for the price and on the terms and conditions specified.

Buyer _____ Date _Oct 26 -10_ Time _3:00 PM_
                Soohwan Kim

Buyer _____ Date _____ Time _____
                Jaejin Kim

Address _____2495 Night Shade Lane_____ _____Freemont, California 94539_____

Buyer [ ___ ][ ___ ] and Seller [ ___ ][ ___ ] have read this page.

CAUTION: The copyright laws of the United States forbid the unauthorized reproduction of this form by any means including scanning or computerized formats.

FORM 101-C.5 CAL (8-2009) COPYRIGHT BY PROFESSIONAL PUBLISHING, NOVATO, CA

**PROFESSIONAL PUBLISHING**

Form generated by: True Forms™ from REVEAL® SYSTEMS, Inc. 800-499-9612

//

Property Address _____ 4210 Rocklin Road _____ Rocklin, California _____

# ACCEPTANCE

Seller accepts the foregoing Offer and agrees to sell the property for the price and on the terms and conditions specified.

**NOTICE: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between the Seller and Broker.**

36. **COMMISSION.** Seller agrees to pay in cash the following real estate commission for services rendered, which commission Seller hereby irrevocably assigns to Broker(s) from escrow:

_____ 3% of the accepted price, or $_____ 13,500.00, to the listing broker: _____ Jim Walker, TRI Commercial _____,

and _____ 3% of the accepted price, or $_____ 13,500.00, to the selling broker: _____ Loren W. Foumess _____

without regard to the agency relationship. Escrow instructions with respect to commissions may not be amended or revoked without the written consent of the Broker(s).

If Seller receives liquidated or other damages upon default by Buyer, Seller agrees to pay Broker(s) the lesser of the amount provided for above or one half of the damages after deducting any costs of collection, including reasonable attorney fees without prejudice to Broker's rights to recover the balance of the commission from Buyer. Commission will also be payable upon any default by Seller, or the mutual rescission by Buyer and Seller without the written consent of the Broker(s), which prevents completion of the purchase. This Agreement will not limit the rights of Broker and Seller provided for in any existing listing agreement.

In any action for commission the prevailing party will be entitled to reasonable attorney fees, whether or not the action is brought to trial or final judgment.

37. **PROVISIONS TO BE INITIALED.** The following items must be "agreed to" by both parties to be binding on either party. In the event of disagreement, Seller should make a counter offer.
Item 30. LIQUIDATED DAMAGES    Item 31. MEDIATION OF DISPUTES    Item 32. ARBITRATION OF DISPUTES

Seller acknowledges receipt of a copy of this Agreement. Authorization is given to the Broker(s) in this transaction to deliver a signed copy to Buyer. Members ☐ may ☐ may not disclose the terms of purchase to members of a Multiple Listing Service, Board or Association of REALTORS® at close of escrow.

38. **IF CHECKED ☐ ACCEPTANCE IS SUBJECT TO ATTACHED COUNTER OFFER DATED** _____

Seller ___ *(Signature)* ___   Seller _____ *(Signature)*

___ Mr. Thomas May, Trustee U.S. Bankruptcy Court ___   _____
*(Please Print Name)*                                      *(Please Print Name)*

Date 10/30/10 Time 5:00 pm   Date _____ Time _____

Address _____   _____

---

**Information Regarding Real Estate Licensees Acting As Agents in This Transaction:**

Selling Broker ___ Mr Loren W. Foumess ___   DRE License # ___ 00472098 ___

By _____   License # _____   Date _____
*(Real Estate Agent for Buyer)*

Address ___ P. O. Box 151 ___   City/State/Zip ___ Sacramento, California 95812 ___

Telephone ___ (530) 632-4622 ___ Fax ___ (530) 662-1724 ___   E-Mail ___ foursquarecommercial@hotmail.com ___

Listing Broker ___ Mr. James Walker ___   DRE License # ___ 01408846 ___

By _____   License # _____   Date _____
*(Real Estate Agent for Seller)*

Address _____   City/State/Zip _____

Telephone ___ (916)284-3194 ___ Fax _____   E-Mail ___ JWalker@TRICommercial.com ___

**Note that neither the Real Estate Brokers nor the Real Estate Agents are parties to the Purchase Agreement between the Buyer and Seller.**

---

CAUTION: The copyright laws of the United States forbid the unauthorized reproduction of this form by any means including scanning or computerized formats.

PROFESSIONAL PUBLISHING






## COUNTER OFFER #1

October 29, 2010

In response to the **OFFER AND AGREEMENT FOR PURCHASE AND SALE OF REAL ESTATE** (Agreement hereafter) to purchase the real property commonly known as **4210 Rocklin Rd.**, City of **Rocklin**, Placer County, and State of California, Assessor's Parcel Number(s) 045-110-028-0000, made by **Soohwan Kim and Jaejin Kim, husband and wife as "Buyer"**, dated **October 26, 2010**, the following **Counter Offer** is hereby submitted:

1. Title Company to be Old Republic Title Co., 200 Auburn Folsom Rd., #205, Auburn, CA, 95602, Kerri Derobertis Escrow Officer.

2. Trustee must receive the approval of the Bankruptcy Court and Wells Fargo Bank before the Offer can be accepted.

3. Trustee must follow all rules and regulations stipulated by the U.S. Bankruptcy Court.

<u>OTHER TERMS:</u>   All other terms to remain the same.

<u>RIGHT TO ACCEPT OTHER OFFERS:</u>   Seller reserves the right to accept any other offer prior to Buyer's written acceptance of this **Counter** offer.  Acceptance shall not be effective until personally received by Seller's agent.

<u>EXPIRATION:</u>   This **Counter Offer** shall expire unless a copy hereof with **Buyer's** written acceptance is delivered to Seller or agent by        .

This Agreement has been prepared for submission to your attorney for his approval.  No representation or recommendation is made by the real estate Broker(s) or their agents or employees as to the legal sufficiency, legal effect, or tax consequences of this Agreement or the transaction involved herein.

SELLER:   **MR. THOMAS MAY, TRUSTEE**
          **U.S. BANKRUPTCY COURT**

By:_____        Date:____10/31/10_____
      Mr. Thomas May, Trustee

Agreed and Accepted By Buyer:

**BUYER:**   **SOOHWAN KIM AND JAEJIN KIM, HUSBAND AND WIFE**

By:_____        Date:_____
      Soohwan Kim

By:_____        Date:_____
      Jaejin Kim

*13*



# OLD REPUBLIC TITLE COMPANY

200 Auburn Folsom Road, Suite 205 • Auburn CA • 95603 • (530) 885-7770 • FAX (530) 302-9012

Chi Sung Lee, Pun Cha Lee

*Exhibit 3*

Date: November 15, 2010
Escrow No.: 2123008952-KDD
Escrow Officer: Kerri Derobertis
Closing Date: 12/10/2009

Property: 4210 Rocklin Road, Rocklin, CA 95677

### Seller's Estimated Closing Statement

| Item | | Debits | Credits |
|------|---|--------|---------|
| Sales Price | | | 450,000.00 |
| Loan payoff to Wells Fargo Bank ($322,000.00) | | | |
| Estimated Payoff | | 322,000.00 | |
| Loan payoff to US SBA ($120.00) | | | |
| Misc fees, if any, to reconvey | | 120.00 | |
| Broker's Commission 6% | | 27,000.00 | |
| To Loren Fourness | 13,500.00 | | |
| To TRI Commercial | 13,500.00 | | |
| Natural Hazard Disclosure Report to Property I.D. | | 99.00 | |
| Misc. Disbursement to South Placer MUD | | 2,076.08 | |
| Estimate-need demand to Director of Industrial | | | |
| Relations/Uninsured Employers Fund | | 3,000.00 | |
| Estimate-need demand to IRS | | 10,000.00 | |
| SPMUD Del Chg in 2010-2011 2nd 1/2 taxes | | 929.87 | |
| R.E. Taxes (045-110-028-000) | | 50,936.88 | |
| Tax: Redeem by 1/30/2011 | 50,936.88 | | |
| R.E. Taxes (045-110-028-000) | | 3,792.10 | |
| 1st Installment 2010-2011 | 3,447.37 | | |
| Penalty | 344.73 | | |
| R.E. Taxes (045-110-028-000) | | 1,045.88 | |
| Tax: Redeem by 1/31/2011 | 1,045.88 | | |
| R.E. Taxes (045-110-028-000) | | 1,594.12 | |
| Tax: Redeem by 1/31/2011 | 1,594.12 | | |
| R.E. Taxes (045-110-028-000) | | 2,847.73 | |
| Tax: Redeem by 1/31/2011 | 2,847.73 | | |
| Homeowners Association Fees | | | |
| Amount to pay/release lien (est) | | 3,912.65 | |
| Additional Charges | | 100.00 | |
| Additional Processing Fee - | 100.00 | | |
| Notary Fees | | 80.00 | |
| Title Charges | | | |
| Recording Fees | | 240.00 | |
| Release | 240.00 | | |
| Due To Seller (est.) | | 20,225.69 | |
| | | | |
| Total | | 450,000.00 | 450,000.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

*14*